IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MARY L. IVY, § | |
|     Plaintiff, § | |
| v. § | No. 3:06-CV-0212-N |
| § | |
| JO ANNE B. BARNHART, § | |
| COMMISSIONER OF THE § | |
| SOCIAL SECURITY ADMINISTRATION, § | |
|     Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This is an appeal from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying the claim of Mary L. Ivy ("Plaintiff") for disability insurance benefits ("DIB") under Title II of the Social Security Act. The Court considered Plaintiff's Opening Brief, Defendant's Brief, Plaintiff's Reply Brief, and the addendum containing the Commissioner's fully favorable decision on Plaintiff's second application ("Second Decision"). The Court reviewed the record in connection with the pleadings. The final decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings.

**A.**     **Background**[1]

    **1.**     **Procedural History**

Plaintiff applied for DIB on August 14, 2003, alleging that she has been disabled since December 1, 2001. (Tr. 32, 41.) After her application was denied at the initial and reconsideration levels, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 43, 49, 50.) Plaintiff and a vocational expert ("VE"), Sally Mickel, testified at the

---

[1] The following background facts are taken from the transcript of the administrative proceedings, which is designated as "Tr."

November 22, 2004 hearing. (Tr. 279-299.) At the hearing, Plaintiff submitted medical records of Plaintiff's treating physician James H. Gray, M.D., covering the period from February 11, 2004 to March 10, 2004. (Tr. 276.) The ALJ issued a decision ("Decision") finding that Plaintiff has a combination of severe impairments, including bilateral lateral epicondylitis, osteoarthritis, and hypertensive cardiovascular disease, but she does not have an impairment, or combination of impairments, that meet or equal any impairment listed in 20 C.F.R. Part 404, Appendix 1. (Tr. 37, Findings 3, 4.) The ALJ found that Plaintiff has the residual functional capacity ("RFC") for sedentary work activity. (Tr. 37, Finding 6.) Based on VE testimony, the ALJ concluded that Plaintiff's impairments do not prevent her from performing her past relevant work as a charge-back clerk from her alleged date of disability of December 1, 2001 until March 24, 2005, the date of the Decision. (Tr. 37, Finding 7.)

Plaintiff submitted additional medical records to the Appeals Council. (Tr. 10, 157-266, 267-275, 277-8.) The Appeals Council denied Plaintiff's request for review on January 13, 2006. (Tr. 4.) Plaintiff timely appealed to this Court. (Compl., Feb. 3, 2006.) Plaintiff also filed a second application on March 25, 2005. The ALJ who had found that Plaintiff was not disabled on March 24, 2005 decided, based upon the record, that Plaintiff was disabled commencing March 25, 2005. He found that Plaintiff suffered from the following severe combination of impairments: osteoarthritis, obesity, type II diabetes mellitus, hypertension, carpal tunnel syndrome, and adjustment disorder with depressed mood. (Second Decision at 3.) The ALJ further found that the combination of impairments causes significant limitation in the claimant's ability to perform basic work activities and that she was unable to perform her past relevant work or any jobs that exist in significant numbers in the national economy. (*Id*. at 3, 7.)

2

Plaintiff contends that the Decision is not supported by substantial evidence and is contrary to law. The Commissioner counters that substantial evidence supports the Decision and that the correct legal standards were applied.

**2.      Plaintiff's Age, Education, and Work Experience**

The ALJ correctly determined that Plaintiff was insured through the date of the Decision. (Tr. 36, Finding 1.) Plaintiff was born on November 25, 1944. (Tr. 94.) Plaintiff turned 60 years old three days after the hearing that was held on November 22, 2004. She is a person closely approaching retirement age for vocational purposes. 20 C.F.R. § 404.1563. By law, if a claimant is limited to sedentary work (as the ALJ found Plaintiff to be), the claimant is considered capable of adjusting to new work only if the sedentary work is so similar to her previous work that she would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry. 20 C.F.R. § 404.1568(d)(4).

Plaintiff completed high school. (Tr. 285-86.) She is considered to have a "high school education and above" for vocational purposes. 20 C.F.R. § 404.1564. Plaintiff worked full time as a charge-back clerk for a credit-card company from 1986 through September 2001, the alleged onset date of her disability. (Tr. 112, 291-92.)

**B.      Plaintiff's Medical Evidence**

The Clinical Electrophysiology Laboratory conducted an EMG of Plaintiff on July 8, 2003. Plaintiff had reported three to four months of upper extremity pain. The examination revealed that Plaintiff is 5'4" and weighs 243 pounds. Her neck was tight but with normal range of motion. Her shoulder range of motion showed tightness, especially with internal rotation. Her left hand grip was weak. Her reflexes were hypoactive but symmetric. She was tender in the

right lateral epicondyle, bicipital groove in the shoulder. The EMG results showed increased irritability, especially on the right, with chronic and mild findings involving the C5, C6, and C7 supplied muscles of the extremity. (Tr. 266.)

In August 2003, an orthopedist, L.T. Johnson, evaluated Plaintiff for a throbbing and aching sensation in both elbows. (Tr. 220). She was diagnosed with bilateral lateral epicondylitis, a repetitive strain impairment caused by overuse of the upper extremities. (*Id*.) On November 9, 2005, Dr. Johnson explained that Plaintiff should refrain from performing jobs that require frequent repetitive use of her hands, such as keyboarding, and that this restriction had been in effect since at least August 2003. (Tr. 10.) Dr. Johnson's report was not before the ALJ at the time of the Decision, but the Appeals Council considered it without comment, declining to review the Decision. (Tr. 4-7.)

On November 6, 2003, Joseph Meacham, M.D., conducted a stress test which was terminated early due to dyspnea which was thought to be an anginal equivalent. Plaintiff's baseline echocardiogram showed suboptimal visualization of the left ventricle, and apparent inferoapical hypokinesis and moderately sever left ventricular hypertrophy. Dr. Meacham recommended more thorough testing. (Tr. 194-202.)

Dr. Anthony Bascone, D.O., tested Plaintiff's knees in July 2004 and found narrowing of the medical joint space compatible with moderate degenerative osteoarthritis with associated cartilaginous and miniscal degenerative changes as well as mild patellar degenerative changes. (Tr. 271-72.)

Dr. James Gray, M.D., treated Plaintiff for glaucoma and poor vision from September, 1997, through December, 2004. (Tr. 249, 203, 212-14, 216-18, 275-76.)

**C.**     **The Hearing**

**1.**     **Plaintiff's Testimony at the Hearing**

Plaintiff elected to proceed without counsel. (Tr. 283.) Plaintiff testified that in her job as a charge-back clerk she was frequently "up and down" and "walking back and forth" because she had to copy and fax documents. (Tr. 289-90.) However, she estimated that she was sitting and working on a computer ninety-five percent of the time. (*Id.*) She complained that this was hard on her eyesight. (*Id.*) Plaintiff testified that she was unable to obtain another position when she could not do the number of strokes per minute that were required. (Tr. 293.) She testified that she does the light housework for herself and her husband and spends most of her time at home. (Tr. 295.) She goes to Church on Sundays and sometimes visits her mother. (*Id.*) Plaintiff told the ALJ that she wished to submit additional medical evidence from Dr. Johnson and her eye doctor. (Tr. 296.) The ALJ told Plaintiff that she would hold the file open until December 17, 2004, to receive the additional medical records. (Tr. 297-98.)

**2**.     **The VE's Testimony at the Hearing**

The VE testified that Plaintiff's past work as a charge-back clerk was sedentary, semiskilled work with a SVP of 4. The VE did not discuss the keyboarding requirements of the charge-back clerk position. The VE testified that Plaintiff had transferrable skills of "telephone answering" which was sedentary.

**D**.     **The Decision**

Plaintiff met the nondisability requirements of the Social Security Act and was insured for disability benefits through the date of the Decision. (Tr. 33.) The ALJ found that Plaintiff had severe impairments of bilateral lateral epicondylitis, osteoarthritis, and hypertensive

cardiovascular disease. He found that Plaintiff's glaucoma and carpal tunnel syndrom were not severe. (Tr. 34.) The ALJ did not address Plaintiff's obesity. He concluded that Plaintiff's impairments were not of the severity to meet, or medically equal, an impairment listed in Appendix 1, Subpart P., Regulations No. 4. (Tr. 35.) The ALJ found that Plaintiff was only partially credible and that she retained the RFC to do sedentary work activity. (Tr. 36.) The ALJ held that Plaintiff could return to her past relevant work as a charge-back clerk and was not disabled. (*Id.*) The ALJ did not consider Dr. Johnson's report of November 9, 2005, that: (1) he had been treating Plaintiff since August 2003; (2) he restricted her "from performing jobs that require frequent repetitive use of her hands, such as keyboarding;" and (3) this restriction existed commencing in August 2003. Dr. Johnson's report was presented to the Appeals Council, but the Appeals Council declined review without discussing the treating physician's report. Plaintiff filed a second application and, without a hearing, the ALJ found that Plaintiff was credible and that she had been disabled since March 25, 2005, the day after the Decision.

### E.     Standard of Review

To be entitled to social security benefits, a plaintiff must prove that she is disabled for purposes of the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant

is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. In this case, step four was the last step in the proceedings because the Commissioner determined that Plaintiff could perform her past relevant work as she performed it and as it is generally performed in the national economy.

      The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a

preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

**F.     Analysis**

Plaintiff argues that reversal and remand is required because the Appeals Council failed to follow its own statutes and regulations when it failed to address properly the new evidence presented to it. The November 9, 2005 medical opinion of Dr. L.T. Johnson, an orthopedist who treated Plaintiff, was presented for the first time to the Appeals Council. The Appeals Council denied review by form letter. (Tr. 4-6.) The Commissioner offers the *post hoc* rationalization that the Appeals Council did not grant review because Dr. Johnson's November 9, 2005 report is a conclusory opinion that is not supported by objective evidence. (Def.'s Br. at 7.) However, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). The Social Security statute and the regulations, when read in conjunction with one another, require the Appeals Council to consider evidence presented to it for the first time when the evidence is new and material. *Rodriguez v. Barnhart*, 252 F. Supp. 2d 329, 336 (N.D. Tex. 2003). *See* 20 C.F.R. § 404.970(b). The Appeals Council must "follow the same rules for considering [medical] opinion evidence as administrative law judges follow." 20 C.F.R. § 404.1527(f)(3). Moreover, the terms of 20 C.F.R. § 404.1527 define "medical opinions" and instruct claimants how the Commissioner will consider the opinions.[2] In the Fifth Circuit, "the opinion of the treating

---

[2] The terms of 20 C.F.R. § 404.1527(a)(2) provide:

(2) Evidence that you submit or that we obtain may contain medical opinions. Medical

8

physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton*, 209 F.3d 448, 455 (5th Cir. 2000); *see Floyd v. Bowen,* 833 F.2d 529, 531 (5th Cir.1987).

Plaintiff reported "pain in arms which cause muscle weakness," neck and shoulder pain, and "c[a]rpel tunnel" symptoms limiting the ability to work. (Tr. 102, 111.) Her daily activity report noted "arm pain mostly in elbows," handling and grip impairments, and muscle weakness. (Tr. 124, 140.) She stated that to make her physical problems better, she takes a pain pill and uses her arms as little as possible. (Tr. 125.) She used the prescription anti-inflammatory drug Vioxx for her musculoskeletal pain, until it was taken off the market. (Tr. 150, 155.)

In August 2003, Plaintiff was evaluated by Dr. Johnson for "a history of developing a throbbing and aching sensation in both elbows." Dr. Johnson diagnosed her with "bilateral lateral epicondylitis," a repetitive strain impairment caused by overuse of the upper extremities. (Tr. 220.) Dr. Johnson's report of November 9, 2005, stated that he had been treating Plaintiff since August 2003, that he would restrict Plaintiff "from performing jobs that require frequent repetitive use of her hands, such as keyboarding," and that this restriction has existed since August 2003. The Court finds that Dr. Johnson's report was highly relevant new evidence and that the Appeals Council failed to apply the proper legal standard to Dr. Johnson's August 2003 medical opinion.

---

opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

Plaintiff also contends that the ALJ failed to properly develop the record with respect to her keyboarding restrictions and obesity. As the Court previously noted, Plaintiff was proceeding without counsel. An ALJ has a duty "scrupulously and conscientiously [to] probe into, inquire of, and explore for all the relevant facts" when a claimant is not represented by counsel. *Bowling v. Shalala,* 36 F.3d 431, 437 (5th Cir. 1994) (quoting *Kane v. Heckler,* 731 F.2d 1216, 1219-20 (5th Cir. 1984)). Plaintiff informed the ALJ at the hearing that she spent ninety-five percent of her time on the computer. (Tr. 289-90.) The VE failed to testify regarding the keyboarding requirements of the job of charge-back clerk. Moreover, the ALJ failed to question the VE about the keyboarding requirements. Plaintiff informed the ALJ that Dr. Johnson was Plaintiff's orthopedist and that Plaintiff would supplement the record with another report from Dr. Johnson. Plaintiff failed to submit the report to the ALJ and the ALJ proceeded without contacting the orthopedist. Additionally, Plaintiff's obesity was noted in the record during a July 8, 2003 but the ALJ failed to develop the record in this regard. The ALJ failed to probe into and explore all of the relevant facts. Additionally, based upon Plaintiff's testimony at the hearing, the ALJ found Plaintiff's statements about the intensity, persistence and limiting effects of her symptoms and pain to be only partially credible in this case; yet, without further testimony he found them to be generally credible in the second case.

The Court will now consider the entire record, including the new evidence and the Second Decision (which is now a part of the record) to determine whether Plaintiff was prejudiced by the legal errors of the Appeals Council and the ALJ. In the Second Decision, the ALJ found that Plaintiff was disabled effective March 25, 2005, whereas in this case, the same ALJ found that Plaintiff was not disabled as of March 24, 2005. The disabilities that prevented Plaintiff from

working beginning March 25, 2005, are not sudden onset disabilities and include Plaintiff's impaired hands and her obesity. In the subsequent case, the ALJ found that Plaintiff suffers from carpel tunnel syndrome, diabetes, obesity, and adjustment disorder with depressed mood in addition to the severe impairments the ALJ identified in the Decision. Dr. Johnson's report stated that Plaintiff experienced keyboarding limitations as early as August 2003. The record reveals that Plaintiff suffers from a combination of slowly progressive severe impairments which should have been more fully explored by the ALJ and which should have been considered in combination with the new evidence before the Appeals Council. Considering the record as a whole, including Dr. Johnson's August 3, 2003 report, the Second Decision, and the undeveloped record before the ALJ, the Court finds that Plaintiff was prejudiced substantially.

The Commissioner's failure to follow its own regulations in connection with the new relevant evidence and the ALJ's failure to fully develop the record affected Plaintiff's substantial rights. Substantial evidence does not support the Decision's finding that Plaintiff was not disabled on March 24, 2005. The case should be reversed and remanded for determination of the onset date of Plaintiff's disability.

### G. Recommendation

The Commissioner's unfavorable decision should be reversed and remanded for further consideration.

Signed, January 22, 2007.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE